**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **MARCUS BALLARD,**<br><br>***Plaintiff,***<br>**v.**<br><br>**GEORGIA DEPARTMENT OF CORRECTIONS, *et. al.*,**<br><br>***Defendants.*** | **CIVIL ACTION NO.**<br>**5:26-cv-00134-TES** |

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is a Motion for Judgment on the Pleadings [Doc. 2] pursuant to Federal Rule of Civil Procedure 12(c) filed by Defendants Georgia Department of Corrections, Antoine Caldwell, Shawn Emmons, Officer Few, and Byron Lee. Plaintiff Marcus Ballard initially filed a Complaint in the Superior Court of Butts County, Georgia, alleging violations of his constitutional rights. [Doc. 1]. Defendants subsequently removed the action to this Court and filed the current Motion. [*Id.*]; [Doc. 2]. For the following reasons, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. [Doc. 2].

**A. <u>Factual Background</u>**

Briefly, Plaintiff was imprisoned at the Georgia Diagnostics and Classifications State Prison ("GDCP") on August 1, 2023. [Doc. 1-1, ¶ 50]. His incarceration there was

set to last a maximum of 59 days. [*Id.* at ¶ 51]. Plaintiff was housed with Blood gang members. [*Id.* at ¶ 57]. He told Defendants, specifically Defendants Few and Lee who are officers at the GDCP, that Blood gang members tried to extort money from him. [*Id.* at ¶ 55]. On August 23, 2023, several inmates in Cellhouse B attacked Plaintiff. [*Id.* at ¶ 52]. He suffered 47 lacerations on his body, including five head wounds, and ultimately had to be air lifted to the hospital. [*Id.* at ¶¶ 53–54, 68]. His injuries are permanent and include memory loss and an inability to run or sleep. [*Id.* at ¶¶ 69–71].

**B. Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute[,] and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). If Rule 12(c) is the route to judgment, courts consider only the pleadings—the complaint, answer, and any exhibits to them. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also* Fed. R. Civ. P. 7(a). In determining whether a party is entitled to judgment on the pleadings, courts "accept the facts in the complaint as true and . . . view them in the light most favorable to the nonmoving party." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). If a comparison of the averments in the competing pleadings reveals a dispute of a material fact, judgment on the pleadings

must be denied. *See Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).[1]

Substantively, courts apply the same principles to a motion made under Rule 12(c) as they would to a motion to dismiss under Rule 12(b)(6). *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examine[s] [the complaint] under Rule 12(b)(6) or Rule 12(c), the question [is] the same: whether [the complaint] state[s] a claim for relief."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, the only pleading on the record is Plaintiff's Complaint. [Doc. 1-1]. Accordingly, the Court will

---

[1] The decisions handed down prior to the close of business on September 30, 1981, by the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth') "shall be binding as precedent in the Eleventh Circuit" for the court of appeals, the district courts, and the bankruptcy courts. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

analyze Plaintiff's Complaint as it relates to each of his claims.

### C. **Discussion**

But first, threshold issues. Plaintiff sues the Georgia Department of Corrections ("GDC") and Defendant Emmons in his official capacity. [Doc. 1-1, ¶¶ 7, 9]. Neither are "persons" under 42 U.S.C. § 1983. *Bullock v. Paris*, No. 24-10674, 2024 WL 4717950, at *2 (11th Cir. Nov. 8, 2024) ("The Supreme Court has held that 'neither a State nor its officials acting in their official capacities are persons under § 1983.'") (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, Defendants GDC and Emmons are entitled to judgment on the pleadings for claims against them.[2]

Plaintiff sues the remaining Defendants—Caldwell, Few, and Lee—in their individual capacities, so they are persons under § 1983 and subject to suit. But, the remaining Defendants argue that they are all entitled to qualified immunity. [Doc. 2-1, p. 18]. "Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties." *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018). The analysis for qualified immunity involves burden-shifting. *Edwards v. Grubbs*, No. 24-12787, 2026 WL 706637, at *4 (11th Cir. Mar. 13, 2026). "To be eligible for qualified immunity, a government official must first establish that he was acting within the scope of his

---

[2] Plaintiff also brings Counts III and IV against "Current Warden in their official capacity." [Doc. 1-1, ¶ 119]. To the extent that "Current Warden" is different from Defendant Emmons, the same logic applies to "Current Warden" as it does to the GDC and Defendant Emmons.

discretionary authority when the alleged wrongful act occurred." *Id.* In other words, he must have "acted (1) in accordance with [his] job-related duties, and (2) within the scope of his authority." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1278 (11th Cir. 2025) (quoting *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021)). If the government official makes this showing, the plaintiff must then show "(1) a violation of a constitutional right (2) that was clearly established at the time of [Defendants'] alleged misconduct." *Edwards*, 2026 WL 706637, at *4 (quoting *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021)). Plaintiff must satisfy both prongs to overcome qualified immunity. *Id.*

Defendants argue they were acting within their discretionary authority here because Plaintiff "specifically alleges all Defendants were 'acting under color of law' . . . ." [Doc. 2-1, p. 19 (citing [Doc. 1-1, ¶¶ 96, 106])]. This is, admittedly, a bare-bones assertion. But, "[a] person acts 'under color of state law' when he acts with power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'" *King v. King*, 342 F. Supp. 3d 1364, 1371 (M.D. Ga. 2018) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "Usually, a state employee acting in the scope of his employment acts under color of state law." *Id.* (citing *West*, 487 U.S. at 50). Accordingly, taking Plaintiff's allegations as true, Defendants were acting within the

scope of their authority.[3]

That shifts the burden to Plaintiff to show a violation of a clearly established constitutional right. To make this showing, Plaintiff argues that his Complaint contains allegations of "abject failures to control the proliferation of weapons, segregate inmates, supervise inmates[,] prevent unsanitary conditions, and provide medical care." [Doc. 9-1, p. 14 (citations omitted)]. In other words, Plaintiff points to the three alleged Eighth Amendment violations that underly his claims: failure to protect/deliberate indifference to excessive inmate violence, constitutionally infirm conditions of confinement, and deliberate indifference to medical needs.

**1. <u>Deliberate Indifference and Failure to Protect</u>**

"To establish a § 1983 claim for deliberate indifference, a plaintiff must show '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Marbury v. Warden III*, No. 24-13513, 2026 WL 1958923, at *5 (11th Cir. July 7, 2026) ("*Marbury III*") (quoting *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019) ("*Marbury I*")). To show a constitutional violation for the purposes of qualified immunity, therefore, plaintiff must show that there was a substantial risk of serious harm and that Defendants were deliberately indifferent to that risk.

---

[3] Furthermore, looking to Defendants' alleged actions, they acted within the scope of their authority. Plaintiff's allegations involve Defendants inadequately conducting or not conducting patrols, inspections, and securing the prison generally. [Doc. 1-1, pp. 4–11]. He also discusses specific Defendants' responses to his injuries. [*Id.* at p. 11]. These allegations fall squarely within the scope of prison staff's authority.

In his Response, Plaintiff primarily argues that the substantial risk of harm comes from understaffing, but also points to other allegations from his Complaint. [Doc. 9-1, pp. 7–8]. Plaintiff's allegations of a substantial risk of harm are best summarized in his Complaint where he alleges "a lack of adequate staffing levels, severe overcrowding, the lack of secure locking mechanisms on cell doors, failure to adequately supervise and monitor the movement of prisoners, prisoners' routine access to contraband weapons, and the widespread corrupt practices of Warden and Officer Defendants." [Doc. 1-1, ¶ 97]. In other words, Plaintiff alleges a "generalized risk of violence" that "pervades [his] prison." *Marbury III*, 2026 WL 1958923, at *1 (quoting *Marbury I*, 936 F.3d at 1235); *see also* [Doc. 1-1, ¶¶ 25–27, 31, 48, 73–75 (detailing how gangs allegedly run the prison and providing statistics on the GDCP)]. To show a substantial risk of serious harm based on a "generalized risk of violence" Plaintiff must meet a high bar. *Marbury III*, 2026 WL 1958923, at *5. Specifically, he must show "that the prison's conditions were objectively 'extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Id.* (quoting *Marbury I*, 936 F.3d at 1233). To make that showing for "'serious inmate-on-inmate violence,' he must demonstrate that such violence is 'the norm or something close to it,' such as 'confinement in a prison where violence and terror reign.'" *Id.* (quoting *Marbury I*, 936 F.3d at 1234). To be sure, "[n]either 'a generalized awareness of risk' nor the mere presence of 'occasional, isolated attacks by one prisoner on another' will suffice." *Id.* (quoting *Marbury I*, 936

F.3d at 1234).

The Eleventh Circuit in *Marbury III* affirmed the use of statistics in context to show a generalized risk of harm. 2026 WL 1958923, at *6. Specifically, the Court looked at the total number of inmate-on-inmate attacks during a two-year period at the prison in which the plaintiff was housed in the context of the prison population, the section of the prison in which the attacks occurred, and the time period in which the incidents occurred. *Id.* The Court emphasized that there was an average of one assault for every 10 inmates in the plaintiff's prison during the two-year period in question.[4] *Id.*

With that said, the Court in *Marbury III* also emphasized that plaintiffs aren't "required to provide . . . quantitative evidence . . . ." *Id.* The Court pointed to a previous case where it held that allegations that the prison's locks didn't work, inmates had ready access to weapons, and no audio or video surveillance system was in place were sufficient to show a substantial risk of serious harm. *Id.* (citing *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)). In *Marbury III,* the Court considered "specific features" of the plaintiff's prison from his pleadings that created a genuine dispute of material facts as to whether he faced a substantial risk of serious harm. *Id.* These included the plaintiff witnessing several stabbings (including one where "a supervisor took a knife only to give it back to the inmate he took it from"), statements from the

---

[4] The Court in *Marbury III* allowed the plaintiff to present statistics from the "*previous few years*." *Id.* at *7 (quoting *Marbury v. Warden*, No. 22-10916, 2022 WL 17175549, at *4 (11th Cir. Nov. 23, 2022) ("*Marbury II*")).

Warden, no officers at their posts for hours, and inmates living in cells they were not assigned. *Id.*

Here, Plaintiff makes several allegations against the prison system in Georgia, generally. *See, e.g.*, [Doc. 1-1, ¶ 25 (GDC statements saying prison populations are 74% violent offense convictions and 30% gang affiliated)]. These generalized allegations about the prison system are not sufficient under the *Marbury* line of cases. But, Plaintiff makes several specific allegations regarding the GDCP where he was attacked which better suit the *Marbury III* analysis.

First, he makes one statistical allegation. He alleges that, at the GDCP, 10 individuals were attacked on January 6, 2023, including 9 in one housing unit. [*Id.* at ¶ 75]. He alleges attacks continued for four days, but offers no further details. [*Id.*]. This single event fails to show a generalized risk of substantial harm through statistical evidence under *Marbury III*. It shows only a one-time isolated event. *Marbury III*, 2026 WL 1958923, at *5.

Next, he makes three "specific features" allegations. He alleges that the GDCP had vacancy levels for corrections officer positions between 40% and 50% from 2021 to 2023.[5] [*Id.* at ¶ 30]. "On several occasions Warden and Officer Defendants would not

---

[5] To address Plaintiff's arguments regarding understaffing as a basis for failure to protect, he has not made the required showing to show constitutionally deficient understaffing. *See Ireland v. Prummell*, 53 F.4th 1274, 1292 (11th Cir. 2022) (must show a deliberate intent to understaff).

inspect cells and entire housing units for days."[6] [*Id.* at ¶ 43]. Finally, he alleges that inmates in GDCP would make weapons out of the prison itself, including glass, pieces of toilets, and pieces of the gate. [*Id.* at ¶¶ 48, 58]. In other words, Plaintiff alleges that the prison was understaffed, inmates had ready access to weapons, and Defendants occasionally would not perform inspections. Viewing Plaintiff's allegations in a light most favorable to him, the Court assumes, for the purposes of Defendant's motion for judgment on the pleadings *only*, that Plaintiff faced a substantial risk of harm under *Marbury III* and its predecessors. The Court, therefore, moves on to the next element of a deliberate indifference claim: that Defendants were actually deliberately indifferent.

To establish deliberate indifference, "a plaintiff must satisfy both an objective and a subjective element." *McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1282 (11th Cir. 2026). For the objective element, a Plaintiff "must 'demonstrate, as a threshold matter, that he suffered a deprivation that was, objectively, sufficiently serious.'" *Id.* (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024)). For the subjective element,

> the plaintiff must demonstrate that the defendant acted with subjective recklessness as used in the criminal law, and to do that he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant actually knew of a substantial risk to inmate

[6] The Court notes that Plaintiff did not allege that *no* officers inspected the housing units, just that these four Defendants did not "on several occasions." [Doc. 1-1, ¶ 43]. In fact, Plaintiff does allege that "Officer Defendants" conducted inspections. He alleges they "would go to the entrance of the dorm or housing units and conduct limited visual inspections." [*Id.* at ¶ 63].

> health or safety, he cannot be found liable under the Cruel and Unusual Punishments Clause if he responded reasonably to the risk.

*Id.* (quoting *Wade*, 106 F.4th at 1262).

This showing "must be based on more than a generalized or abstract knowledge of a danger to the prisoner; the official must be aware of a specific risk." *McClinton*, 172 F.4th at 1283. In other words, "a constitutional violation occurs only when prison officials act 'consciously' such that their acts or omissions knowingly have the effect of inflicting a punishment upon prisoners." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Id.* (quoting *Farmer*, 511 U.S. at 838).

Plaintiff has not adequately alleged the subjective element of deliberate indifference here. Most of Plaintiff's allegations are "a generalized or abstract knowledge of a danger" not attributed to any specific Defendant. For example, Plaintiff alleges that

> Officer Defendants were [sic] at all times had knowledge that a substantial risk of serious harm was caused by a lack of adequate staffing levels, severe overcrowding, the lack of secure locking mechanisms on cell doors, failure to adequately supervise and monitor the movement of prisoners, prisoners' routine access to contraband weapons, and the widespread corrupt practices of Warden and Officer Defendants.

[Doc. 1-1, ¶ 97]. Even when applied to each Defendant individually, these conclusory allegations of generalized knowledge are insufficient to establish subjective knowledge.

On a related note, Plaintiff argues that the officers were subjectively aware of the risk because of an "inference of knowledge based on the obvious nature of the risk." [Doc. 9-1, p. 9]. Plaintiff cites *Farmer* to support his "obvious nature of the risk" argument. 511 U.S. at 842. But, the Court in *Farmer* specifically outlined an example of an obvious risk: a risk of inmate attacks that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . ." *Id.* Plaintiff has not established a longstanding or pervasive risk of attacks, nor has he pled a risk of attacks that is well documented or expressly noted. Therefore, Plaintiff's obvious-nature-of-the-risk argument also fails. Because Plaintiff did not allege actual subjective knowledge of an obvious risk for any specific Defendant (other than Defendants Few and Lee detailed below), he has failed to show they violated his constitutional rights.[7]

Plaintiff does make one specific allegation for Defendants Few and Lee. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person knows."). He alleges that "[p]rior to the attack, [he] informed several officers, staff, unit managers and other

[7] Plaintiff tries to argue supervisory liability applies here. [Doc. 9-1, pp. 5–6]. But, Plaintiff has not pled sufficient facts to show "a history of widespread abuse" that "puts the responsible supervisor on notice of the need to correct the alleged deprivation," or that a "custom or policy results in deliberate indifference to constitutional rights." *Arries v. Hill*, 686 F. Supp. 3d 1279, 1301 (N.D. Ga. 2022). Absent such a showing, there can be no supervisory liability. *Id.*

individuals responsible for maintaining safety in the prison including Defendant Officer [Few] and Sergeant Lee, that Blood gang members made several attempts to extort him for money." [Doc. 1-1, ¶ 55]. This is not a warning about the specific danger Plaintiff faced—namely, getting severely beaten by other inmates. As stated earlier, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Therefore, Defendants did not violate Plaintiff's constitutional rights.[8]

**2. <u>Deliberate indifference to constitutionally infirm conditions</u>**[9]

"To establish a condition of confinement claim, [Plaintiff] must prove three elements: (1) 'a condition of confinement that inflicted unnecessary pain or suffering'; (2) 'the defendant's deliberate indifference to that condition;' and (3) 'causation.' *Harris v. Jackson*, No. CV: 25-00369-TFM-N, 2025 WL 4689695, at *2 (S.D. Ala. Nov. 18, 2025) (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1535, 1538-39 (11th Cir. 1993)). Therefore, the

---

[8] Additionally, Plaintiff has not established any action or inaction by Defendants Few or Lee that rises above the level of negligence, despite Plaintiff's arguments that failure to patrol constitutes deliberate indifference. *See, e.g.*, *Stay v. Flannagan*, No. 3:17-cv-734-J-39MCR, 2018 WL 4031594, at *4 (M.D. Fla. Aug. 23, 2018) ("failure to conduct cell checks and head counts does not amount to deliberate indifference") (citing *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013)).

[9] Plaintiff's Complaint contains two separate claims, but in his Response, he combines Counts 2 and 4 into one § 1983 claim for "deliberate indifference to constitutionally infirm conditions . . . ." [Doc. 9-1, p. 4]. The Court, therefore, analyzes both as one claim since the constitutional violation for qualified immunity purposes is the same.

constitutional injury for qualified immunity is deliberate indifference to a condition of confinement that inflicted unnecessary pain or suffering. Plaintiff alleges that there was insufficient plumbing, cold showers with no water pressure, brown drinking water, water that did not drain properly, and a "lack of secure locking mechanisms on cell doors." [Doc. 1-1, ¶ 108]. Additionally, the toilets did not work, and "[f]ecal matter and other bodily excrement wilocould [sic] not be sanitarily removed from the individual cells . . . ." [*Id.* at ¶ 109]. But, these minimal allegations, especially without some sort of a time reference indicating the length and severity of the supposedly constitutionally infirm conditions, lack the detail to sufficiently show a constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("routine discomfort is part of the penalty that criminal offenders pay for their offense against society"); *Stokes v. Johnson*, No. CV621-011, 2023 WL 2787980, at *7 (S.D. Ga. Apr. 4, 2023) ("There is no constitutional requirement for access to a working toilet"); *Reis v. Augustine*, No. 5:12-cv-00336-MP-EMT, 2014 WL 6611584, at *5 (N.D. Fla. Nov. 21, 2014) (allegation that the plaintiff "was only provided cold water showers does not implicate the deprivation of a basic human need"); *Stay v. Flannagan*, No. 3:17-cv-734-J-39MCR, 2018 WL 4031594, at *4 (M.D. Fla. Aug. 23, 2018) ("failure to conduct cell checks and head counts does not amount to deliberate indifference") (citing *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013)).

### 3. <u>Deliberate Indifference to Medical Needs</u>

To be sure, "[a] prisoner bringing a deliberate-indifference [to medical needs] claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). "The Eighth Amendment prohibits 'deliberate indifference to a prisoner's serious illness or injury.'" *Parsons v. Sheriff of Jefferson Cnty., Ala.*, No. 22-13521, 2023 WL 4635891, at *3 (11th Cir. July 20, 2023) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "To establish a claim for deliberate indifference to a medical need, a plaintiff must establish '(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" *Id.* (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'—that, 'if left unattended, poses a substantial risk of serious harm.'" *Keohane*, 952 F.3d at 1266 (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). The deliberate indifference elements are the same as detailed above. Therefore, the constitutional injury for qualified immunity here is deliberate indifference to a serious medical need.

Plaintiff alleges two incidents of deliberate indifference to medical needs.[10] First, he alleges that "Defendants observed that [Plaintiff]'s teeth were missing or damaged as a result of the severe beating he sustained, yet Defendants failed to provide [Plaintiff] with any medical treatment upon return." [Doc. 1-1, ¶ 115]. He alleges he "repeatedly complained to Defendants of the pain he was experiencing and the immediate and severe need for medical treatment." [*Id.* at ¶ 116]. Second, in his facts, Plaintiff also alleges that, after he was stabbed, "other inmates alerted [Defendant] Lee, who was walking by the dorm or housing that [Plaintiff] was stabbed." [*Id.* at ¶ 84]. After Defendant Lee was alerted to the stabbing, Defendant Lee "did not even enter the housing unit to render aid. Instead, [Defendant] Lee instructed other inmates to bring [Plaintiff] to the entrance of the housing unit." [*Id.* at ¶ 85].

After Plaintiff was outside the unit, Defendant Lee "did not render any aid or even make an attempt to assist [Plaintiff]. Instead, [Defendant] Lee continued to eat chips as he forced [Plaintiff] to walk to the medical unit without any assistance." [*Id.* at ¶ 86]. Plaintiff ultimately passed out on the walk and was taken to the hospital. [*Id.* at ¶¶ 87–88]. As for damages, Plaintiff states that he "suffered physical injuries including but not limited to enduring several stab wounds, being tied, bruises and gashes,

---

[10] Plaintiff's claim is only expressly based on the first incident related to his teeth. The second incident related to the stabbing is only in his facts section, but the facts of his Complaint are all incorporated into all of his claims. Additionally, Plaintiff only discusses the stabbing in his Response. [Doc. 9-1, p. 12]. To be thorough, the Court addresses both incidents: the first because those are the facts explicitly underlying his claims, and the second because that is what he relies on in his Response.

permanent scarring and disfigurement, collapsed lungs, diminished use of his limbs, loss of enjoyment of life, humiliation, mental suffering, emotional distress, stress, and other non-economic losses . . . ." [*Id.* at ¶ 117].

Neither of Plaintiff's incidents are sufficient. First, "[i]n certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003); *see also Newsome v. Prison Health Servs., Inc.*, No. CV405-042, 2009 WL 1469203, at *5 (S.D. Ga. May 26, 2009) (collecting cases). But, the Court need not decide whether Plaintiff's dental issues here constitute a serious medical need because he failed to allege facts to show subjective knowledge from any of the Defendants. Instead, he once again makes conclusory allegations of knowledge about all Defendants, including the improper defendants such as the Georgia Department of Corrections. *C.f. Aiken v. Dep't of Just.*, No. 16-CIV-24150, 2017 WL 11884820, at *8 (S.D. Fla. May 8, 2017) ("a medical-treatment claim will not lie against non-medical personnel unless they were personally involved in the denial of treatment or deliberately interfered with prison doctors' treatment") (citing *Williams v. Limestone Cty., Ala.*, 198 Fed. App'x 893, 897 (11th Cir. 2006)). Absent a single specific allegation showing—rather than concluding—subjective knowledge, Defendants did not violate his constitutional rights.

Second, although the Court does not condone Defendant Lee sitting eating chips

while Plaintiff was injured, that action does not rise to the level of deliberate indifference. After all, Defendant Lee did immediately act to get Plaintiff medical care. *C.f. Conley v. Oliver*, 829 F. Supp. 3d 1207, 1224–26 (N.D. Ga. 2026) (deliberate indifference claim survives motion to dismiss when there was a two-hour delay between officers' discovery of the injured plaintiff and his arrival at the hospital).[11]

---

[11] The Court thoroughly considered *Conley* in deciding this case. 829 F. Supp. 3d 1207. After all, the two cases are similar: an inmate-plaintiff was brutally attacked by other inmates. Both decisions are being issued around the same time. A closer look at the complaint in *Conley* reveals that the two cases share similar allegations, too. *Conley v. Oliver et al.*, No. 1:25-cv-013130AT (N.D. Ga. Mar. 12, 2025), ECF No. 5. Both allege understaffing, inadequate patrols, that the prison didn't separate gang members from non-gang members, and that inmates use the dilapidated prison infrastructure to make weapons. [*Id.* at ¶¶ 157, 182, 195, 226, 314]. Both complaints contain allegations about the Georgia prison system, generally, and the conditions of their specific prisons. They also both contain deliberate indifference claims. [*Id.* at pp. 142–72]. But, the complaint in *Conley* contains allegations that distinguish it from the case here. In addition to alleging that there were 17 deaths over the course of a year in the specific prison of *Conley*, the complaint also provides names, death dates, and causes of death for each. [*Id.* at pp. 43–45]. It provides a similar level of detail for contraband found in the prison during a short period of time leading up to the attack. [*Id.* ag pp. 51–53]. Furthermore, the complaint in *Conley* links its allegations to the specific attack in ways that the complaint here does not. For example, the *Conley* complaint not only states that there were insufficient security checks at the prison, but that there were *no checks* at all the night the plaintiff was attacked. [*Id.* at ¶ 203]. Moreover, the complaint details how the plaintiff in *Conley* had problems with his attacker in the past, was severely under-sized compared to his attacker, and repeatedly begged specific Defendants over the course of days leading up to his attack to move him because he feared for his life. [*Id.* at ¶¶ 70, 78–93]. In all, the complaint in *Conley* shows, rather than just concludes about, the conditions of the prison, and then alleges specific connections between those conditions and the attack. It also shows specifically how Plaintiff begged to be moved, who he talked to, and the physical risks his attacker posed to his health. With that said, the court in *Conley* did not explicitly analyze the allegations above. It did allow the deliberate indifference claims to continue, though, so the Court assumes those allegations are sufficient. If those are sufficient allegations, the allegations here fall short.

To be sure, the court in *Conley* did specifically analyze the deliberate indifference to a serious medical need claim. It looked at the over two-hour gap between the officer's discovery of the injured plaintiff and his arrival at the hospital which was 20 minutes away. *Conley*, 829 F. Supp. 3d at 1225. It also considered the severity of the plaintiff's injuries. *Id*. From these factors, the court concluded that there was likely subjective knowledge and deliberate indifference—at least, to survive a motion to dismiss. *Id.* at pp. 1226–27. That is obviously different from the case at hand, where Plaintiff has no allegations of delay or wrongful conduct, but instead alleges that Defendant Lee began acting—if not ideally—immediately upon learning of Plaintiff's injuries. [Doc. 1-1, ¶¶ 84–88].

According to Plaintiff's allegations, inmates told Defendant Lee that Plaintiff was injured as Defendant Lee was passing by the unit. Defendant Lee then directed the other prisoners to bring Plaintiff to the entrance of the housing unit and sent Plaintiff to the medical staff. Plaintiff was ultimately taken to the hospital and received medical care there. Plaintiff's Complaint does not contain allegations that Defendant Lee's actions worsened Plaintiff's condition. It is also not entirely clear what Plaintiff wanted Defendant Lee to do differently other than perhaps act quicker and with more concern. However, Defendant Lee was not required to attempt to render medical care himself. *See Peacock v. Smith*, No. 5:18-CV-00284-TES, 2018 WL 5649899, at *7 (M.D. Ga. Oct. 31, 2018) (officers not required to personally render medical aid). Once again, absent actions rising to the level of deliberate indifference, Defendant Lee did not violate Plaintiff's constitutional rights. Therefore, Plaintiff has not established a constitutional violation in either of these situations.

**D. Request for Leave to Amend**

Finally, Plaintiff requests leave to Amend in the alternative. [Doc. 9-1, p. 15]. But, "[f]iling a motion is the proper method to request leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). Even then, the motion must "(1) set forth the substance of the proposed amendment, or (2) attach a copy of the proposed amendment to the motion." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th Cir. 2020). Plaintiff's request is contained within his Response to Defendant's Motion and does not

contain an attached copy of the proposed amendment. Therefore, his request is improper.

**E. Conclusion**

Without an underlying constitutional violation, Defendants are entitled to qualified immunity. Accordingly, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. [Doc. 2].

**SO ORDERED**, this 3rd day of August, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**